[No. 11429. Department One. July 15, 1914.]

THE STATE OF WASHINGTON, *Appellant*, v. CHICAGO, MILWAUKEE & PUGET SOUND RAILWAY COMPANY, *Respondent.*[1]

MASTER AND SERVANT—WORKMEN'S COMPENSATION—PREMIUMS PAYABLE TO STATE—CLASSIFICATION — RATE — STATUTES — CONSTRUCTION. Under 3 Rem. & Bal. Code, § 6604-4, of the workmen's compensation act, classifying "construction work" and requiring payment into the state treasury of a premium of six and one-half per cent of the payroll for construction work on "tunnels," with various other rates for "bridges," "carpenter work," etc. and five per cent for "steam railroads," and Id., § 6604-4, subd. 3, providing that if a single establishment of work comprises several occupations listed in different risks, the premium shall be computed according to the payroll of each occupation, if clearly separable, a railroad engaged in the construction of a tunnel for use on its main line must pay the premium listed for "tunnel" construction, where the payroll therefor was clearly separable from its payrolls for other construction work (CHADWICK, J., dissenting).

[1]Reported in 141 Pac. 897.

Appeal from a judgment of the superior court for King county, Humphries, J., entered May 28, 1913, upon findings in favor of the defendant, dismissing an action for premiums due under the industrial insurance law, after a trial to the court. Reversed.

*The Attorney General* and *S. H. Kelleran, Assistant,* for appellant.

*F. M. Dudley,* for respondent.

MAIN, J.—This action arises under the workmen's compensation act, chapter 74, laws of 1911, p. 345 (3 Rem. & Bal. Code, § 6604-1 *et seq.*). It presents the question of the proper classification of the work done in the construction of a tunnel through the Cascade mountains, commonly known as the Rockdale tunnel.

The plaintiff, by its industrial insurance department, had classified the work as tunnel construction, upon which a contribution was demanded at the rate of six and one-half per cent. The defendant insisted that the work should be classified as steam railroad construction work, upon which a contribution at the rate of five per cent was required. The cause was tried to the court without a jury. So far as necessary to set them forth, the facts found by the trial judge were as follows:

"That in or about the month of April, 1912, the defendant commenced the construction of, and at all times since has been engaged in the construction of a tunnel through the Cascade Mountains, from a point near Rockdale in King county, a station on the main line of the defendant railway, to a point near Keechelus, in Kittitas county, another station on said main line of railway; that the sole purpose for which defendant is constructing said tunnel is to lay, maintain and operate therein and through the same a steam railroad to be used by said defendant as a portion of its main line of steam railroad, extending from the waters of Puget Sound to the town of Mobridge in South Dakota; that the construction of said tunnel for the purpose of operating its main line of rail-

way through the same, was a part of the original plan of said defendant company for the construction of the main line of said railway from Mobridge, South Dakota, to the waters of Puget Sound, and that it has at all times been the purpose and intention of said railway company to construct such tunnel and to operate its trains through the same as a part of its main line of railway; that in order to secure as speedy connection as possible between that portion of said main line of railway west of the Cascade Mountains, and that portion to the east thereof, and to the end that such railway might be operated without awaiting the completion of such tunnel, the said railway constructed a railway track connecting the portions of its said main line of railway east and west of said Cascade Mountains respectively; that such connecting track has been constructed, and has been in operation, together with the portions of said main line east and west of the Cascade Mountains respectively, and thus forming a continuous line from the waters of Puget Sound to the town of Mobridge, South Dakota, for about two years; that said track so constructed and now in operation between Rockdale and Keechelus, crosses over the Cascade Mountains through the Snoqualmie Pass; and that said line is now, and has been, since its construction about two years ago, as aforesaid, operated over and through said pass by the defendant for freight and passenger purposes, and will continue to be so operated for such purposes until the completion of said tunnel; that upon such completion, the line over the Pass from Rockdale to Keechelus, will be abandoned and the main line of the defendant railway will be maintained and operated through the said tunnel; that the estimated cost of the construction of said tunnel is approximately two million five hundred thousand ($2,500,000.00) dollars, and that the estimated time before the completion thereof, is approximately three (3) years.

"That the actual payroll of the workmen employed by the said defendant in and about its said work of tunnel construction, in the extra hazardous employments and departments thereof, for the months of April, May, June, July, 1912, was and is the sum of $24,682.22; that the industrial insurance department of the state of Washington has assessed against the defendant a premium or contribution of six and one-half per cent of said sum, and has made call for premiums or con-

tributions for the said months above mentioned, and has demanded the payment of said six and one-half per cent upon said amount, being the sum of $1,604.33, from the defendant; that the defendant has paid five per cent upon said actual payroll, amounting to $1,244.10, and has refused to pay the additional one and one-half per cent, amounting to $370.23, which latter sum is the amount in controversy in this action; . . ."

No question is raised as to the correctness of these findings. Judgment was entered dismissing the action, from which the appeal is prosecuted. The sole question to be determined is, whether the work in question should be classified under the workmen's compensation act as tunnel construction or steam railroad construction. If the latter is the proper classification, then the judgment should be affirmed; otherwise, it should be reversed.

The provisions of the law which call for construction are certain portions of 3 Rem. & Bal. Code, § 6604-4. This section is both extensive and comprehensive, and for the purpose of convenient reference, the particular portions involved will be referred to as subdivisions 1, 2, and 3, and are here set forth as such. Subdivision 1 provides that employers engaged in extra hazardous industries shall pay into the state treasury a sum equal to a percentage of the pay roll in accordance with the following schedule:

### CONSTRUCTION WORK.

Tunnels; bridges; trestles; subaqueous works; ditches and canals (other than irrigation without blasting); dock excavation; fire-escapes; sewers; house moving; house wrecking .................................................. .065
Iron, or steel frame structures or parts of structures........ .080
Electric light or power plants or systems; telegraph or telephone systems; pile-driving; steam railroads............. .050
Steeples, towers or grain elevators, not metal framed; dry docks without excavation; jetties; breakwaters; chimneys; marine railways; waterworks or systems; electric railways with rock work or blasting; blasting; erecting fireproof doors or shutters...................................... .050

Steam heating plants; tanks, water-towers or windmills, not
  metal frames ........................................... .040
Shaft sinking ............................................ .060
Concrete buildings; freight or passenger elevators; fireproofing
  of buildings; galvanized iron or tin works; gasworks, or
  systems; marble, stone or brick work; road-making with
  blasting; roof work; safe moving; slate work; outside
  plumbing work; metal smokestacks or chimneys.......... .050
Excavations not otherwise specified; blast furnaces.......... .040
Street or other grading; cable or electric street railways with-
  out blasting; advertising signs; ornamental metal work in
  buildings ............................................. .035
Ship or boat building or wrecking with scaffolds; floating
  docks ................................................ .045
Carpenter work not otherwise specified..................... .035

    *      *      *      *      *      *      *

Road-making ............................................. .020

Subdivision 2 classifies the industries for the purpose of making such payment and the making good of any deficit. In other words, this classification requires each class to respond to the demands upon it without claiming contribution from any other class. It is as follows:

CONSTRUCTION WORK.

Class 1. Tunnels; sewer; shaft sinking; drilling wells.

Class 2. Bridges; mill wrighting; trestles; steeples, towers or grain elevators not metal framed; tanks, water towers, windmills not metal framed.

Class 3. Subaqueous works; canal other than irrigation or docks with or without blasting; pile-driving; jetties; breakwaters; marine railways.

Class 4. House moving; house wrecking; safe moving.

Class 5. Iron or steel frame structures or parts of structures; . . . carpenter work not otherwise specified; marble, stone or tile setting; mantel setting; metal ceiling work; painting of buildings or structures; concrete laying in floors or foundations; . . .

Class 6. Electric light and power plants or system; telegraph or telephone systems; cable or electric railways with or without rock work or blasting; waterworks or systems; . . .

Class 7. Steam railroads; logging railroads.

Class 8. Road making; street or other grading; concrete laying in street paving; asphalt laying. . . ."

Subdivision 3 provides:

If a single establishment or work comprises several occupations listed in this section in different risk classes, the premium shall be

computed according to the pay-roll of each occupation if clearly separable; otherwise an average rate of premium shall be charged for the entire establishment, taking into consideration the number of employees and the relative hazards.

It will be noted that tunnel work in subdivision 1 is given a classification carrying a rate of six and one-half per cent, while railroad construction work carries a rate of five per cent. Railroad construction work may, and at times does, require tunnel construction.

In subdivision 2, that being the classification for making payment and making good any deficit, it likewise appears that tunnel construction and railroad construction are not in the same classification. It is well known that, in railroad construction, there are involved a number of occupations which are scheduled in different risk classes, some of which take a rate greater than railroad construction and some less. Practically the same situation exists as to electric railways and road work, as well as other enterprises that might be mentioned. The question is whether, when the occupations included in railroad construction are listed in different risk classes, and railroad construction itself is given a risk classification, each occupation shall carry its specific rate or the rate for railroad construction shall include all. The answer to this question is found in subdivision 3. It is there provided that if a single establishment or work comprises several occupations listed in different risk classes, the premium shall be computed according to the pay roll of each occupation if clearly separable. In this case, the pay roll for the tunnel construction was so separable. The trial court found not only the actual pay roll for workmen employed in the tunnel, but that the railroad other than the tunnel had been previously constructed and was in operation. If the operations involved in the construction are so interrelated as not to be clearly separable, then the enterprise classification would prevail. In other words, when the various occupations are separable, each occupation takes the rate of its particular class. But where they are not separable, the equalized classification

for the enterprise fixed by the statute controls. When the occupations are so interrelated as not to be separable and the enterprise which comprises several occupations is not given a separate risk class, an average rate of premium shall be charged for the entire establishment, as provided in the last clause of subdivision 3. This seems a reasonable construction of the statute and gives effect to all of its provisions. To hold that, since railroad construction work is given a separate classification, all occupations included therein takes the railroad classification rate, would in effect destroy the classification of tunnel construction. Practically all of the enterprises in connection with which tunnels would be constructed take a separate risk classification.

The judgment will be reversed, and the cause remanded with direction to enter judgment as prayed for in the complaint.

CROW, C. J., ELLIS, and GOSE, JJ., concur.

CHADWICK, J. (dissenting)—It seems to me that the judges are clearly wrong. Inasmuch as the statute, under the title "Construction Work," covers "tunnels, bridges, trestles, . . . pile driving, . . . blasting," at .065, and ". . . grading, carpenter work . . ." at .035, which terms, it will be admitted, cover every detail of railroad construction, the question naturally arises, Why were the terms, "construction work, . . . steam railroads, .050," used at all? The words either mean what they import—construction of steam railroads—or they mean nothing. The majority opinion writes them out of the statute, for it has held that the general term "steam railroads," must give way to the particular terms, "tunnels, trestles, carpenter work, etc."

It is fundamental that, in the construction of statutes, courts must give effect to every word if possible. Following this rule, it is obvious that the legislature intended to strike an average, between tunnels, bridges, trestles and blasting, at .065, and grading and carpenter work at .035, inasmuch

as they are all the descriptive terms applicable to railroad · construction, and fix the rate for the construction of steam railroads at .050, or one-half the sum of .065 and .035. This construction gives effect to the whole statute, whereas the majority opinion kills a part of it; for, if it be the law that the schedule can apply to nothing but a particular detail, and instead of one rate covering all items of railroad construction to be included in one account with the commission, there would be as many rates and as many accounts as there are kinds of work. The fact that the words, "construction . . . steam railroads," were used, indicates, in a most conclusive way, the intent of the legislature to make one rate and one account, and we should not ignore it.

I dissent.